**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
Jeffrey D. Prol, Esq. (JP 7454)
Thomas A. Pitta, Esq. (TP 3018)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400
*Proposed Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>STATE INSULATION CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-11-15110  (    ) |

**DEBTOR'S MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION; (II) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105(a) AND 364(c); (III) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (IV) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001; AND (V) GRANTING RELATED RELIEF**

State Insulation Corporation, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed undersigned counsel, submits this motion (the "Motion") for entry of an order, pursuant to sections 105(a), 362, and 364(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtor to use cash collateral and provide adequate protection; (ii) authorizing the Debtor to obtain post-petition secured financing from I&G Lending, LLC ("I&G") (a) on an interim basis up to an aggregate principal amount of $200,000 pursuant to an interim order (the "Interim Order"), and (b) on a final basis up to an aggregate principal amount of $1,500,000 pursuant to a final order (the "Final Order" and, together with the Interim Order, the "DIP Orders"); (iii) granting I&G post-petition liens and

providing it superpriority administrative expense status; (iv) authorizing the Debtor to enter into agreements with I&G; (v) modifying the automatic stay; (vi) scheduling a final hearing; and (vii) granting related relief. In support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. sections 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. sections 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. section 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 105(a), 362, 363, 364 and 507(b) of the Bankruptcy Code and Bankruptcy Rule 4001.

## BACKGROUND

**A.    General Background**

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee, examiner or committee has been appointed in this chapter 11 case.

6. The Debtor, a corporation organized under the laws of the State of New Jersey with corporate headquarters located at 525 Johnstone Street, Perth Amboy, New Jersey, is a distributor of insulation products and accessories for the installation of insulation.

7. From the Debtor's formation in 1961 through 1977, the Debtor distributed many different insulation products, a small percentage of which contained asbestos as an ingredient. For the most part, manufacturers ceased using asbestos in insulation products by 1972. However, two products the Debtor distributed continued to contain asbestos until approximately 1977. The Debtor sold a very limited quantity of those two products. As a result, the Debtor has

been named as a defendant in numerous asbestos-related actions, approximately 90 of which are currently pending.

8. The Debtor has commenced this case in an effort to reorganize and provide for payment of its asbestos and other liabilities and preserve its business for the benefit of all creditors.

9. For more detailed information regarding the Debtor's business and the events leadings to this chapter 11 filing, please refer to the Declaration of George Lionikis, Jr. in Support of Chapter 11 Petition and First Day Motions (the "Lionikis Declaration"), filed simultaneously herewith.

**B.      Prepetition Financing**

10. Prior to the Petition Date, the Debtor and JPMorgan Chase Bank, N.A. ("Chase") entered into a Business Loan Agreement dated July 23, 2010 (the "Chase Loan Agreement") pursuant to which Chase agreed to make available to the Debtor a line of credit (the "Chase Loan") of up to $1,500,000, limited to an amount supported by a borrowing base consisting of certain eligible accounts and eligible inventory (as more particularly described in the Chase Loan Agreement). In connection with the Chase Loan, the Debtor executed and delivered to Chase a promissory note dated July 23, 2010 (the "Chase Note"), pursuant to which the Debtor promised to pay to Chase the principal sum of $1,500,000, or so much thereof as borrowed by the Debtor under the Chase Loan Agreement, together with interest thereon at a variable rate based on the LIBOR Rate, calculated on a 360-day year, with all unpaid principal, interest, and other charges due in full on July 23, 2011. Pursuant to the Chase Loan Agreement, the Debtor's obligations under the Chase Loan were secured by all inventory, chattel paper, accounts, equipment and general intangibles of the Debtor including, (a) all accessions, attachments, accessories, tools, parts, supplies, replacements and additions to any of the foregoing, (b) all products and produce of any of the foregoing, (c) all accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease or other disposition of any of the

foregoing, (d) all proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing, whether due to judgment, settlement or other process, and (e) all records and data relating to any of the foregoing, whether in the form of writing, photograph, microfilm, microfiche, or electronic media, together with Chase's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media. In addition, in connection with the Chase Loan, George Lionikis, Sr. ("Lionikis Sr.") executed and delivered to Chase a Commercial Guaranty under which Mr. Lionikis guaranteed the Debtor's obligations under the Chase Note.

11. On February 11, 2011, I&G[1] purchased the Chase Loan from Chase and the Debtor and I&G entered into an Amended and Restated Loan Agreement (the "I&G Loan Agreement," a copy of which is annexed hereto as Exhibit "A") pursuant to which I&G agreed to make loans of up to $1,500,000 to the Debtor, subject to the terms and conditions of the I&G Loan Agreement. Pursuant to the I&G Loan Agreement, the Debtor's obligations under the I&G Loan Agreement are secured by all personal property and fixtures of the Debtor whether presently existing or existing in the future or presently owned or acquired in the future by the Debtor and whether or not subject to the Uniform Commercial Code, including, but not limited to, all goods, money, instruments, accounts, farm products, inventory, equipment, documents, chattel paper, investment property, deposit accounts, supporting obligations and general intangibles, and all interest, dividends and other distributions thereon paid and payable in cash or property, and all replacements and substitutions for, all accessions and additions to, and all products and proceeds of, all of the foregoing (the "Prepetition Collateral"). As of the Petition Date, the principal balance due under the I&G Loan Agreement is approximately $500,000 (the "Prepetition Indebtedness").

---

[1] I&G is owned by Lionikis Sr.

C. **Proposed Post-Petition Financing**

12. I&G is willing to permit the Debtor to use cash collateral (as defined by section 363(a) of the Bankruptcy Code, including, any prepetition proceeds and, subject to section 552 of the Bankruptcy Code, any and all post-petition proceeds of the Prepetition Collateral (the "Cash Collateral") and to operate under the I&G Loan Agreement as modified in certain respects by the Interim Order. In addition, I&G is willing to provide the Debtor with access to additional post-petition credit (the "DIP Financing"), inclusive of the Prepetition Indebtedness, in the maximum amount of $1,500,000 on the terms set forth I&G Loan Agreement. Accordingly, the Debtor intends to obtain the DIP Financing from I&G in order to operate its business and pay its obligations when they come due. As indicated in the 13 week budget and which has been approved by I&G (as amended, modified or supplemented from time to time, the "DIP Budget," a copy of which is annexed hereto as Exhibit "B"), the Debtor will need the DIP Financing to operate post-petition.

13. As set forth in the Lionikis Declaration, the Debtor does not have sufficient liquidity to operate its business and in the ordinary course without a line of credit in place. The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations, is essential to the Debtor's continued viability. Thus, the ability of the Debtor to obtain sufficient working capital and liquidity through the proposed DIP Financing is vital to the Debtor's reorganization efforts. Accordingly, the Debtor has an immediate need to obtain the DIP Financing in order to permit, among other things, the orderly continuation of the operation of the Debtor's business, to minimize the disruption of the Debtor's business operations and to manage and preserve the assets of its estate in order to maximize the recovery to all creditors.

14. The Debtor believes that it would be futile, under the circumstances, to pursue alternative post-petition financing in the form of: (1) unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; (2) unsecured credit allowable under sections 364(a) and 364(b) of the Bankruptcy Code; or (3) secured credit

pursuant to section 364(c) of the Bankruptcy Code, on more favorable terms and conditions from sources other than I&G. I&G has agreed to provide the DIP Financing on terms well below market, especially as a result of (a) the lack of any commitment or similar fees and (b) the low interest rate charged by I&G. Accordingly, in exchange for the DIP Financing, the Debtor proposes to provide I&G with the reasonable protections described below, including first-priority liens on all of the Debtor's assets (the "<u>DIP Collateral</u>," as more particularly described below).

### RELIEF REQUESTED

15. By this Motion, the Debtor seeks the entry of the DIP Orders:

    (a) authorizing the Debtor to use Cash Collateral; provided that all expenditures of Cash Collateral shall be pursuant to the DIP Budget;

    (b) authorizing the Debtor to obtain the DIP Financing up to an aggregate principal amount of $1,500,000; provided that, prior to the Final Order, the Debtor may only borrow on an interim basis up to an aggregate principal amount of $200,000, and provided further that all interim and final borrowings shall be pursuant to the DIP Budget;

    (c) authorizing the Debtor to enter into such documents, instruments and agreements as are required to implement the terms of the DIP Orders, and to perform such other and further acts as may be required in connection with the I&G Loan Agreement;

    (d) granting replacement liens of the Prepetition Collateral subject and junior only to the post-petition liens described below;

    (e) granting security interests, liens and superpriority claims (including a superpriority claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) in favor of I&G, to secure the DIP Financing;

    (f) modifying the automatic stay imposed by section 362 of the Bankruptcy Code as required to permit I&G to implement the terms of the DIP Orders and, upon the occurrence and during the continuance of an Event of Default, to exercise all rights and remedies in the I&G Loan Agreement as set forth in the Interim Order; and

(g) scheduling a final hearing ("Final Hearing"), to be held no later than thirty (30) days after entry of the Interim Order, to consider entry of the Final Order approving certain notice procedures in connection therewith.

16. Pending entry of the Final Order, the Debtor seeks approval of the Interim Order, which will (i) authorize the Debtor to borrow up to $200,000 under the DIP Financing, (ii) grant to I&G the liens and superpriority claims described herein, and (iii) schedule the Final Hearing and approve certain notice procedures in connection therewith.

**SUMMARY OF PRINCIPAL TERMS OF DIP FINANCING**

17. The DIP Financing is the product of arm's length negotiations between the Debtor, I&G and their respective advisors.

18. Certain key terms of the DIP Financing Agreement are as follows:[2]

(a) Borrower: State Insulation Corporation

(b) Use of Proceeds: The DIP Financing shall be used solely for working capital and general corporate purposes and to pay the out-of-pocket fees and expenses incurred by the Borrower in connection with the Loan Documents.

(c) Interest Rate: The outstanding principal balance of the Loans shall bear interest at a rate per annum equal to 2.5%.

(d) Default Rate. If any payment of principal and/or interest is not paid when due (whether at stated maturity, by acceleration or otherwise) the unpaid principal balance of the Loans shall bear interest at a rate per annum (whether before or after the entry of a judgment thereon) equal to 2.00% above the rate which would otherwise be applicable and any overdue interest or other amount payable under the Loan Documents shall bear interest at a rate per annum equal to 4%. All such interest shall be payable on demand.

(e) Maturity Date: June 30, 2011, or such earlier date on which all outstanding Loans shall become due and payable, whether by acceleration or otherwise.

---

[2] This summary is qualified in its entirety by reference to the I&G Loan Agreement. To the extent there is any inconsistency between this Motion and the I&G Loan Agreement, the latter shall govern. Capitalized terms used in this summary but not otherwise defined shall have the meanings ascribed to such terms in the I&G Loan Agreement.

  (f) <u>Security and Superpriority</u>: The Loans shall be secured, and all interest that accrues thereon shall be secured, by post-petition liens pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code. In addition, the Loans shall have superpriority administrative expense status under section 364(c)(1) of the Bankruptcy Code.

### **BASIS FOR RELIEF**

**A.** **<u>Request to Use Cash Collateral and Provide Adequate Protection</u>**

19. The Debtor seeks Court approval to use the Cash Collateral in accordance with the DIP Budget. As indicated on the DIP Budget, the Debtor has significant monthly obligations for inventory, wages, rent, taxes, maintenance, insurance and utilities and other costs to operate and run its business. Absent the use of the Cash Collateral, the Debtor will be unable to meet these obligations in order to operate on a day-to-day basis and therefore maintain the value of its business as a going-concern. Accordingly, the Debtor has demonstrated that it has an emergent need for the use of cash collateral.

20. Pursuant to section 363(c) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or Court approval. I&G has consented to the use of the Cash Collateral.

21. Bankruptcy Code Section 363(e) provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court shall "prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). What constitutes adequate protection is determined on a case-by-case basis. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994); *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways under section 361 of the Bankruptcy Code, with the focus being to protect a secured creditor from any diminution in the value of its interest in the collateral during the period during of its use post-petition. *See Swedeland*, 16 F.2d at 564-565; *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995). *See also, In re Cann & Saul Steel Co.*, 76 B.R. 479 (Bankr. E. D. Pa. 1987); *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate protection

is designed to preserve the secured creditor's position at the time of the bankruptcy."). Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *Swedeland*, 16 F.2d at 564. Although the term "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected. *See id.*

22. Pursuant to section 361 of the Bankruptcy Code, a debtor may provide adequate protection by making a cash or periodic payment to the creditor or providing it with the replacement lien. The creditor is only entitled to protection to the value of its collateral supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs. *In re Gallegos Research Group, Corp.*, 193 B.R. at 584-85 (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)); *Cann & Saul Steel*, 76 B.R. at 483.

23. The Debtor proposes to provide I&G with adequate protection in the form of a replacement lien on the Prepetition Collateral. Furthermore, the preservation of the Debtor's operations on a going-concern basis will maintain the value of the Prepetition Collateral. This will also avoid any abrupt discontinuation of the Debtor's operations. *See Aqua Assocs.*, 123 B.R. at 196 ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized."). The Debtor respectfully submits that the protections proposed herein to I&G are appropriate to adequately protect I&G's security interests. Accordingly, the Court should authorize the Debtor use the Cash Collateral in accordance with the terms of the DIP Budget.

**B.    Request to Obtain Post-Petition Financing**

24. Section 364(c) of the Bankruptcy Code provides that if a debtor-in-possession is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1)

of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the debtor-in-possession to obtain credit or incur debt:

>  (1)    with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code; or
>
>  (2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
>  (3)    secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

25.    Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

>  (2)    <u>Hearing</u>.  The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion.  If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Bankruptcy Rule 4001(c).

26.    Courts have articulated a three-part test to determine whether a debtor may obtain financing under section 364(c) of the Bankruptcy Code:

>  (1) the debtor is unable to obtain unsecured credit under section 364(b) (i.e., by granting a lender administrative expense priority);
>
>  (2) the credit transaction is necessary to preserve the assets of the estate; and
>
>  (3) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test and holding that "[o]btaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated

by credit, but also because the credit required is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the debtor to obtain comparable credit elsewhere.").

27. The Debtor believes that the terms of the I&G Loan Agreement are appropriate and reasonable and should be approved as a valid exercise of its reasonable business judgment. *See In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) ("[B]usiness judgments should be left to the board room and not to this Court."). *See also In re Trans World Airlines, Inc. (TWA v. Travelers Int'l A.G.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interests of TWA and its creditors."); *In re TM Carlton House Partners, LTD*, 91 B.R. 349, 358 (Bankr. E.D. Pa. 1988) (holding that due to the debtor's distinct awareness of its own financial needs, the court would not second-guess its business judgment to put aside cash to effectuate a refinancing of its debts.); *cf.*, *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985)("Business judgments should be left to the board room and not to this Court."); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-514 (Bankr. D. Utah 1981) (holding that courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor-in-possession's] authority under the [Bankruptcy] Code").

28. The purpose of the I&G Loan Agreement is to provide the Debtor with the necessary liquidity to operate its business during the pendency of this chapter 11 case. As noted above, the terms of the DIP Financing are better terms than those that would be available from another lender.

C. **I&G is Entitled to the "Good Faith" Protections of Section 364(e) of the Bankruptcy Code**

29. The terms and conditions of the DIP Financing are fair and reasonable. Such terms and conditions were negotiated in good faith and at arm's length at all times by the Debtor,

-11-

I&G and their respective advisors. The Debtor and I&G extensively discussed and refined the DIP Budget and the terms of certain "first-day" pleadings that require the immediate use of access to interim financing from I&G.

30. In light of the foregoing, I&G should be accorded the benefits and protections of section 364(e) of the Bankruptcy Code with respect to the DIP Financing; specifically, any loans, advances or other financial accommodations that I&G makes or causes to be made from time-to-time to the Debtor on the terms and conditions set forth in the I&G Loan Agreement and the Interim Order should be deemed to have been made and provided in "good faith" as the term is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order or any provisions thereof are thereafter modified, vacated, amended or stayed by subsequent order of this Court or any other court without the express consent of I&G.

D.    **Request For Interim Relief**

31. Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the fourteen day period following the filing of a motion for authority to use cash collateral "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2). Similarly, Bankruptcy Rule 4001(c) permits a court to approve a debtor's request for authority to obtain financing during the same period "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2). In examining such requests under Bankruptcy Rule 4001, courts apply the same business judgment standard as is applicable to other business decisions. *See*, *e.g.*, *Ames*, 115 B.R. at 38. The Debtor requires the ability to obtain immediate credit to maintain its business operations. Such credit is needed to pay its expenses and to satisfy other essential working capital and operating needs. The immediate and irreparable harm that could result in the absence of approval of interim financing is detrimental to the interests of the Debtor, its creditors and all parties in interest. The Debtor submits that, for the reasons set forth herein,

authority to use obtain post-petition financing and use of cash collateral on an interim basis as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtor's business.

32.     To the extent Bankruptcy Rule 6004(h) is applicable to this Motion, the Debtor also seeks a waiver of the fourteen day stay under Bankruptcy Rule 6004(h).

**E.     Modification of Automatic Stay**

33.     Implementation of the DIP Financing requires modification of the automatic stay to the extent applicable and necessary, to permit I&G to implement the terms of the Interim Order and, upon the occurrence and during the continuance of an Event of Default, to exercise all rights and remedies in the I&G Loan Agreement as set forth in the Interim Order.  Provisions of this kind are standard in debtor-in-possession financing and are reasonable under the circumstances.

**F.     Establishing Notice Procedures and Request for Final Hearing**

34.     Pursuant to Bankruptcy Rule 4001(b)(2), the Court may commence a final hearing fourteen (14) days after service of this Motion.  Local Rule 4001-2(c) further specifies that the Final Order may only be entered after notice and a hearing and that ordinarily a final hearing shall be held at least ten (10) days after the organizational meeting of a creditors committee, if any.  The Debtors shall, within three (3) business days of the entry of the Interim Order by the Court, serve a copy of the Interim Order and a notice of the Final Hearing ("Final Hearing Notice") to consider entry of the Final Order on the date established by the Court.

35.     Any party in interest objecting to the relief sought at the Final Hearing shall serve and file objections, which objections shall:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the District of New Jersey; and (iii) be filed with the Clerk of the United States Bankruptcy Court for the District of New Jersey no later than three (3) business days before the Final Hearing and served upon the following parties so as to be received not less than three (3) business days before the Final

Hearing: (a) counsel for the Debtor, Lowenstein Sandler PC, Attn: Thomas A. Pitta, Esq, 65 Livingston Avenue, Roseland, New Jersey 07068, tpitta@lowenstein.com; (b) the United States Trustee for the District of New Jersey; and (c) counsel for I&G, Litwin & Tierman, P.A., Attn: Gerald H. Litwin, Esq., 2 University Plaza, Hackensack, New Jersey 07601, glitwin@litwintierman.com.

36. The Debtor requests that the Court schedule the Final Hearing and approve the proposed notice and objection procedures for the Final Hearing set forth herein.

## NOTICE, PRIOR REQUEST AND WAIVER OF BRIEF

37. No trustee, examiner or, creditors' committee has been appointed in this case. Notice of this Motion has been given to (i) the United States Trustee for the District of New Jersey, (ii) counsel for I&G; and (iii) the Debtor's twenty largest unsecured creditors. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

38. No prior request for the relief sought herein has been made to this or to any other court.

39. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement under D.N.J. LBR 9013-2 of filing a brief be waived.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, the Debtor respectfully requests that this Court (i) immediately enter the Interim Order, (ii) schedule the Final Hearing, and (iii) grant the Debtor such other and further relief as it deems may be just and proper under the circumstances.

Dated: February 23, 2011                **LOWENSTEIN SANDLER PC**

By:   */s/ Kenneth A. Rosen*
      Kenneth A. Rosen, Esq. (KR 4963)
      Jeffrey D. Prol, Esq. (JP 7454)
      Thomas A. Pitta, Esq. (TP 3018)
      65 Livingston Avenue
      Roseland, New Jersey 07068
      Tel: (973) 597-2500
      Fax: (973) 597-2400

      *Proposed Counsel to the Debtor and
      Debtor-in-Possession*