**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
Jeffrey D. Prol, Esq. (JP 7454)
Thomas A. Pitta, Esq. (TP 3018)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400
*Proposed Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>STATE INSULATION CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-15110  (MBK) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 1102(a)(3) PRECLUDING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE DEBTOR'S CHAPTER 11 CASE**

State Insulation Corporation, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed undersigned counsel, submits this motion (the "Motion") for entry of an order pursuant to section 1102(a)(3) of title 11 of the United States Code (the "Bankruptcy Code") precluding the appointment of an official committee of unsecured creditors in the Debtor's chapter 11 case. In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334, which is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief sought herein is section 1102(a)(3) of the Bankruptcy Code.

## BACKGROUND

3. On February 23, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 the Bankruptcy Code. As set forth on the Debtor's chapter 11 petition, the Debtor elected to be considered a "small business debtor" as defined in section 101(51D) of the Bankruptcy Code.

4. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee, examiner or committee has been appointed in this chapter 11 case.

6. The Debtor, a corporation organized under the laws of the State of New Jersey with corporate headquarters located at 525 Johnstone Street, Perth Amboy, New Jersey, is a distributor of insulation products and accessories for the installation of insulation.

7. From the Debtor's formation in 1961 through 1977, the Debtor distributed many different insulation products, a small percentage of which contained asbestos as an ingredient. For the most part, manufacturers ceased using asbestos in insulation products by 1972. However, two products the Debtor distributed continued to contain asbestos until approximately 1977. The Debtor sold a very limited quantity of those two products. As a result, the Debtor has been named as a defendant in numerous asbestos-related actions, approximately 90 of which are currently pending.

8. The Debtor has commenced this case in an effort to reorganize and provide for payment of its asbestos and other liabilities and preserve its business for the benefit of all creditors.

9. For more detailed information regarding the Debtor's business and the events leading to this chapter 11 filing, please refer to the Declaration of George Lionikis, Jr. in Support of Chapter 11 Petition and First Day Motions (the "Lionikis Declaration") [Docket No. 2].

## THE DEBTOR'S UNSECURED CREDITORS

A.  **Asbestos Claimants**

10. The majority of the Debtor's unsecured debt is held by the asbestos claimants (the "Asbestos Claimants") holding contingent unliquidated claims in an aggregate amount that it is currently unknown.

11. The Debtor was named as a defendant in an asbestos case for the first time in 1978. Throughout the eighties and nineties, the claims continued to come in, although the Debtor was able to have many cases dismissed as a result of the Debtor's production of evidence demonstrating it had not sold asbestos containing products to the claimant's (a) employers or (b) jobsite. The number of claims filed against the Debtor has declined significantly since 1998. In 1998, 384 claims were filed; in 2009, there were only 39 filed. There are currently approximately 90 asbestos-related actions against the Debtor pending.

12. As the prospect of onerous asbestos litigation, awards, and settlements increased, the Debtor became concerned about its ability to continue in business and to pay fair compensation to claimants injured by its historical operations. Accordingly, the Debtor conferred with counsel regarding ways to compensate legitimate asbestos claimants fairly while preserving the company's business, including utilization of the special provisions of the Bankruptcy Code, such as section 524(g).

13. Prior to the Petition Date, the Debtor and its advisors entered into discussions with counsel for certain of the known Asbestos Claimants regarding the Debtor's desire to create a trust and obtain the injunctive relief available under section 524(g) of the Bankruptcy Code. These discussions led to the formation of an ad hoc committee to represent the interests of Asbestos Claimants (the "Ad Hoc Committee") and to negotiate the parameters of a proposed plan of reorganization. As a result of the discussions with the Ad Hoc Committee, the Debtor and certain affiliates agreed to the framework for a plan of reorganization, pursuant to which the Debtor and its affiliates will fund a trust for the benefit of the Asbestos Claimants and the Debtor's trade creditors will be paid in full.

14.     On or about March 2, 2011, the Office of the United States Trustee (the "U.S. Trustee") sent out a notice of formation meeting for an official committee of asbestos claimants. Based upon the discussions between Debtor's counsel and members of the As Hoc Committee, the Debtor believes that there is sufficient interest and an official committee of asbestos claimants will likely be formed.

**B.     General Unsecured Creditors**

15.     The Debtor's remaining unsecured creditors are trade creditors with claims totaling approximately $1.5 million.  The Debtor believes that a significant portion of these claims may be (a) entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code or (b) subject to setoffs permitted pursuant to section 553 of the Bankruptcy Code.

16.     On March 2, 2011, the Debtor filed its Motion for Entry of an Order Pursuant to Sections 105(a), 363(b) and 503(b)(9) of Title 11 of the United States Code and Rule 6003 of the Federal Rules of Bankruptcy Procedure (a) Authorizing the Debtor to Pay Prepetition Claims of General Unsecured Creditors in the Ordinary Course of Business, and (b) Granting Related Relief (the "Motion to Pay General Unsecured Claims") [Docket No. 39].  By the Motion to Pay General Unsecured Claims, the Debtor seeks entry of an order pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, authorizing it to pay General Unsecured Claims (as defined therein) in the ordinary course of business in an amount not to exceed $1.5 million.

**RELIEF REQUESTED**

17.     By this Motion, the Debtor seeks the entry of an order pursuant to section 1102(a)(3) of the Bankruptcy Code precluding the appointment of an official committee of unsecured creditors.

## BASIS FOR RELIEF

18.     As a general rule, in a chapter 11 case the United States Trustee is required to appoint a committee of creditors holding unsecured claims.  *See* 28 U.S.C. § 1102(a)(1) ("the United States trustee shall appoint a committee of creditors holding unsecured claims").  *See also In re Texaco Capital, Inc.*, 79 Bankr. 560, 566 (Bankr. S.D.N.Y. 1987) (appointment of committee of creditors holding unsecured claims against Chapter 11 debtor is mandated "under § 1102(a)(1) if there are creditors willing to serve"); 5 *Collier on Bankruptcy* P 1102.01 at 1102-4 ("As long as there are creditors who hold unsecured claims and who are willing to serve on a committee of unsecured claimants, the United States trustee is required to appoint a committee to represent such claimants [.]").  However, pursuant to section 1102(a)(3) of the Bankruptcy Code, "[o]n request of a party in interest in a case in which the debtor is a small business debtor and for cause, the court may order that a committee of creditors not be appointed."  11 U.S.C. § 1102(a)(3).

19.     "Small business debtor" is defined in section 101(51D) of the Bankruptcy Code as "a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning or operating real property or activities incidental thereto) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the petition or the date of the order for relief in an amount not more than $2,000,000 (excluding debts owed to 1 or more affiliates or insiders) for a case in which the United States trustee has not appointed under section 1102(a)(1) a committee of unsecured creditors or where the court has determined that the committee of unsecured creditors is not sufficiently active and representative to provide effective oversight of the debtor."  11 U.S.C. § 101(51D).  The Debtor clearly falls within the definition of a "small business debtor" because the Debtor's aggregate noncontingent liquidated secured and unsecured debts as of the Petition Date was approximately $1.5 million, excluding the debt owed to I & G Lending, LLC, an insider of the Debtor.  Accordingly, section 1102(a)(3) of the Bankruptcy Code is applicable to the Debtor's chapter 11 case.

20. The Bankruptcy Code does not define what constitutes cause under section 1102(a)(3). Likewise, there is scant case law addressing the issue, and it appears that no court has developed a test for determining whether cause exists under section 1102(a)(3).

21. The Debtor submits that there is sufficient cause here for the Court to order that a committee of unsecured creditors not be appointed. Pursuant to the Motion to Pay General Unsecured Claims, the Debtor intends to pay all of its general unsecured creditors in full in the ordinary course of business, subject to approval of the Court. Given that unsecured trade creditors will be paid in full, there is simply nothing for a committee of general unsecured creditors to do and appointment of such a committee will only unnecessarily increase the administrative costs of the estate. Moreover, as set forth above, the U.S. Trustee has already begun soliciting interest for the formation of an asbestos committee and it is extremely likely that an asbestos committee will be formed. Thus, the interests of the Debtor's largest creditor constituency – the Asbestos Claimants – will be adequately represented by the Asbestos Committee.

22. In one of the only reported decisions dealing with section 1102(a)(3), the debtor filed a motion under section 1102(a)(3) asserting that the appointment of a committee would deplete the estate and further the self-serving interest of the creditors. *In re Haskell-Dawes, Inc.*, 188 B.R. 515 (Bankr. E.D. Pa. 1995). The United States Bankruptcy Court for the Eastern District of Pennsylvania found that the debtor failed to establish cause under section 1102(a)(3) finding that: (i) it is possible that the monetary benefits gained by the unsecured creditors, through the efforts of a committee, could far outweigh any impact which the committee's costs may have on the "pot" of money available for distribution to unsecured creditors, (ii) a committee might be able to negotiate a larger equity contribution, and (iii) a committee could be instrumental in identifying any obstacles which exist to confirmation and possibly effecting a consensual plan. *Id.* at 520-21. The court likewise dismissed the debtor's argument that there was insufficient interest in the formation of a committee because only three creditors responded

to the motion, noting that the court could not assume that all unsecured creditors other than those who responded had no interest in the formation of a committee. *Id.* At 521-22.

23. The reasoning set forth by the Court in *Haskell-Dawes* weighs heavily in favor of precluding the formation of a committee of non-asbestos creditors in the instant case. Unlike the debtor in *Haskell-Dawes*, the Debtor proposes to pay general unsecured creditors in full and, therefore, there is no likelihood that the efforts of a "trade committee" could increase the distribution to general unsecured creditors or obtain equity for the general unsecured creditors. Rather, it is the Asbestos Claimants that need a committee to represent their interests and work with the Debtor towards confirming a plan of reorganization. Finally, it is unlikely that unsecured creditors, who stand to get paid in full pursuant to the Debtor's Motion to Pay General Unsecured Claims (subject to Court approval) would even be interested in forming a committee.

24. Furthermore, as noted by the Court in *Haskell-Dawes*, the role of a creditors' committee is to represent the interests of its constituents and maximize their recovery by consulting with the trustee concerning the administration of the case, investigating the acts, conduct and financial condition of the debtor; investigating the operation of the debtor's business and the desirability of having such business continue, participating in the formulation of a plan, and providing advice to those whom the committee represents regarding any plan that is formulated. *Id.* at 519. As there will already be an Asbestos Committee and a Legal Representative in this case, a committee representing general unsecured creditors is not required to serve this critical oversight process.

25. Moreover, it is not unusual for an asbestos-related chapter 11 proceeding to not have an official committee of unsecured creditors, even where the debtor was not a "small business debtor." For example, in *In re Hercules Company*, Case No. 08-27822 (MS) (Bankr. D.N.J. 2008), where the debtor was not a "small business debtor," only an official committee of asbestos claimants was formed. Additionally, no committee of unsecured creditors was formed in the chapter 11 cases of *G-I Holdings, Inc.*, Case No. 01-30135 (RG) (Bankr. D.N.J. 2001); *Congoleum Corp.*, Case No. 03-51524 (KCF) (Bankr. D.N.J. 2003) and *Burns & Roe*

*Enterprises, Inc.*, Case No. 00-41610 (RG).  In *Congoleum*, the debtor filed a motion to pay trade creditors in the ordinary course similar to the motion filed by the Debtor in this case, which motion was approved by the Court.  *See Congoleum Corp.*, Case No. 03-51524 (KCF), Docket Nos. 14 and 74.

26. Accordingly, the Debtor submits that cause exists for the Court to order that a committee of unsecured creditors not be appointed.

## NOTICE, PRIOR REQUEST AND WAIVER OF BRIEF

27. No trustee, examiner or, creditors' committee has been appointed in this case.  Notice of this Motion has been given to (i) the United States Trustee for the District of New Jersey, (ii) counsel for I&G Lending, LLC, the Debtor's secured lender; (iii) the Debtor's twenty largest unsecured creditors; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

28. No prior request for the relief sought herein has been made to this or to any other court.

29. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement under D.N.J. LBR 9013-2 of filing a brief be waived.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form submitted herewith, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated:  March 3, 2011    **LOWENSTEIN SANDLER PC**

By:    */s/ Kenneth A. Rosen*
Kenneth A. Rosen, Esq. (KR 4963)
Jeffrey D. Prol, Esq. (JP 7454)
Thomas A. Pitta, Esq. (TP 3018)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to the Debtor and Debtor-in-Possession*