**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
Jeffrey D. Prol, Esq. (JP 7454)
Thomas A. Pitta, Esq. (TP 3018)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400
*Proposed Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>STATE INSULATION CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-11-15110 (MBK) |

**AFFIDAVIT OF BERNARD A. KATZ IN SUPPORT OF THE DEBTOR'S
APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327,
328 AND 1107 AND FED. R. BANKR. P. 2014 AUTHORIZING THE EMPLOYMENT
AND RETENTION OF J.H. COHN LLP AS FINANCIAL ADVISORS TO
THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

Bernard A. Katz, pursuant to 28 U.S.C. § 1746, states as follows:

1. I am a Certified Public Accountant, licensed under the laws of the State of New Jersey, and a member of the accounting and consulting firm of J.H. Cohn LLP ("**JHC**" or the "**Firm**"). JHC maintains offices at 333 Thornall Street, Edison, New Jersey 08837.

2. This Affidavit is submitted in connection with and in support of the application (the "**Application**") of State Insulation Corporation, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), for entry of an order, pursuant to sections 327, 328 and 1107 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2014 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") authorizing the Debtor to employ and retain J.H. Cohn LLP ("**JHC**") as financial advisors to the Debtor, effective as of February 23, 2011

(the "**Petition Date**"), and to provide the disclosures required under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

3. I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

4. Founded in 1919, JHC is an accounting and consulting firm with expertise in financial restructuring. One of JHC's specialties is providing financial advisory services in bankruptcy and insolvency matters. JHC provides a broad range of corporate advisory services including, but not limited to, general financial advice, capital raising, and financial restructuring. JHC's professionals have extensive experience working with financially troubled companies in complex financial restructurings both in and out of Chapter 11. JHC's professionals have advised debtors, creditors and equity holders in many restructurings.

5. JHC has the requisite accounting experience to provide the necessary services to the Debtor in this chapter 11 case.

6. The professional services that JHC may provide to the Debtor, include, but are not limited to the following:

   a) Gain an understanding of the Debtor's businesses, books and records and reporting systems;

   b) Assist the Debtor in ascertaining its current liquidity and short term sources and uses of cash flow via the preparation of thirteen week rolling cash flow forecasts;

   c) Assist the Debtor in the preparation of adequate protection analyses;

   d) Consult with management, and when necessary assist the Debtor in the preparation of the company's statement of financial affairs, chapter 11 bankruptcy schedules, and monthly operating reports;

   e) Consult with management, and when necessary assist in the preparation of reports to the Debtor's lenders (and other creditors as required) regarding its financial performance;

   f) Analyze the financial operations of the Debtor as necessary, including analyzing the Debtor's operating performance versus budget;

   g) Consult with management, and when necessary assist the Debtor in developing a plan of reorganization and required disclosures;

h) Consult with management and when necessary, assist in the preparation of business plans, including the review of long-term projections and liquidation analyses;

i) Analyze, formulate and advise in connection with potential income tax ramifications of any debt forgiveness or proposed plan of reorganization;

j) Attend meetings and conference calls with management, counsel and other parties, as necessary; and,

k) Provide other services as directed by the Debtor and/or its counsel.

7. Subject to the Court's approval and pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other rules or procedures which this Court may fix, JHC shall seek compensation on an hourly basis, plus reimbursement of the actual and necessary expenses that JHC incurs in accordance with the ordinary and customary rates which are in effect on the date the services are rendered.

8. JHC's current hourly rates are as follows:

| | |
|---|---|
| Partner | $580 - $790 |
| Managers, Senior Managers, Directors | $420 - $610 |
| Other Professional Staff | $260 - $400 |
| Paraprofessionals | $180 |

The charges for professionals who will render services to the Debtor are based upon actual time charges on an hourly basis and based upon the experience and expertise of the professional involved. The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

9. JHC's policy to charge its clients in all areas of practice for all expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, and transcription costs. Expenses for actual costs incurred will be charged in accordance with the applicable Rules and Guidelines of this Court.

10. The Debtor retained JHC as their financial advisor on October 1, 2010. The Debtor paid JHC a total of $150,689.07 during the prepetition period  JHC billed the Debtor $114,689.07 for contemporaneous services rendered and disbursements and other charged incurred, all in accordance with the terms and conditions of the Debtor's prepetition engagement letter with JHC, leaving a balance of $36,000 to be utilized as a retainer for professional services to be rendered and charges and disbursements to be incurred by JHC on the Debtor's behalf after the Petition Date (the "**Bankruptcy Retainer**"). The Bankruptcy Retainer will be applied to JHC's post petition fees and expenses that are allowed by this court. Accordingly, JHC does not hold any claim against the Debtor or its estate for prepetition services rendered.

11. No agreement or understanding exists between JHC and any other person for any division or sharing of compensation that is prohibited by statute. The proposed engagement of JHC is not prohibited by Bankruptcy Rule 5002.

12. To the best of my knowledge, JHC does not hold an interest adverse to the Debtor's estate and is a disinterested person, as that term is defined in section 101(14) of the Bankruptcy Code.

13. Insofar as I have been able to ascertain through diligent inquiry, JHC has no connection with the Debtor, its creditors, any other party in interest, its current respective attorneys or professionals, the United States Trustee or any person employed in the office of the United States Trustee, and does not represent any entity having an adverse interest to the Debtor in connection with the Debtor's chapter 11 case. However, JHC has in the past worked with, continues to work with and has mutual clients with certain law firms who may represent parties-in-interest in this case.

14. Because of the size and diversity of JHC's practice, JHC may have in the past performed professional services for, and may in the future provide services for entities that are claimants or interest holders of the Debtor in matters wholly unrelated to the Debtor's pending bankruptcy case.

15. To the best of my knowledge and following a conflict search of my firm's records, neither I, nor any professional at JHC has performed services or is associated with any creditors in this case or any party in interest. JHC has conducted a conflict check against the (i) Debtor and its affiliates, (ii) the Debtor's principals and shareholders, (iii) all known unsecured creditors, and (iv) the Debtor's secured creditors, and does not hold any interest or represent any entity having an adverse interest to the Debtor in this case. JHC has also conducted a conflict check against the names of the staff members of the United States Trustee's office for the District of New Jersey.

16. Despite the efforts described above to identify and disclose JHC's connections with the Debtor and the parties listed in paragraph 13 above, because the Debtor has numerous creditors and other relationships, JHC is unable to state with certainty that every client representation or other connection has been disclosed. If JHC discovers additional information that requires disclosure, JHC will supplement these disclosures in the future as appropriate.

17. To the best of my knowledge, JHC has not been retained to assist any entity or person other than the Debtor on matters relating to or in connection with this case. If this court approves the proposed employment of JHC as financial advisors to the Debtor, JHC will not accept any engagement or perform any services in this case for any entity or person other than the Debtor. JHC may, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties-in-interest in this case; provided, however, that such services do not and will not relate to, or have any direct connection with, this case.

18. JHC has had, may currently have, and may in the future have commercial or professional relationships directly or indirectly with customers, competitors, and creditors of the Debtor. As described above, however, JHC has undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for the twenty (20) largest unsecured creditors, equity security holders, or insiders in matters related to this case.

-6-

I hereby certify, under penalty of perjury, that the foregoing factual statements made by me are true to the best of my knowledge, information and belief.
.

                                                    /s/ *Bernard A. Katz*
                                                    Bernard A. Katz, CPA

Sworn and subscribed to
before me this 2nd day
of March, 2011

/s/ *Rosellen Martoken*
A Notary Public of New Jersey
My commission expires October 21, 2013